Good morning, Your Honors. Good morning. Brian Morris on behalf of the plaintiff, Teresa Carsten, and also appellant. Can you speak? I'm having a little trouble hearing. I want to make sure I hear you. This is better. Thank you. Great. Thank you. I'm not going to go into the facts of this case. I think it's pretty well briefed by both parties. Instead, I just wanted to start going into the law. And this circuit's law started in U.S. v. Ferris, which was ultimately taken to the U.S. Supreme Court and so it was denied. And that was looking at the core delaying factors in this matter as to whether a law of general application, such as in the federal law, would in fact apply to a tribe or whether they have immunity instantly. In this circuit's case law, it's very clear that general federal laws do apply to tribes absent limited circumstances. In this case, there was only one circumstance that was potentially argued, and that was touching on the right of self-governance. Again, the facts are laid out fairly clearly as to we don't have a tribe. We do have some sort of tribal organization. We have plenty of non-Indians working, dealing with. In essence, if you will, being a conduit of Federal funds to the general population. And the issue is simply, does the law touch upon exclusive rights of self-governance of surely intramural matters, such as membership, inheritance rules, domestic relations? And we simply submit it doesn't. We know that's not true. So it's a question of whether you can sue ITCN or whether you can sue the individuals. Well, if we can touch ITCN, we clearly can touch the individuals, because that argument becomes moot. But if we cannot. But even if the statute would apply to tribes, if they have tribal immunity, it doesn't matter, right? So maybe your argument that this should apply to tribes generally as employers could help you get to the individuals. But if the tribe has sovereign immunity here, aren't you done? No. As to ITCN, if it is an armament of the tribe? As where it would be done with ITCN, if that is found, but not with individuals for two reasons. One is the FMLA provides for individual liability. And in the case that this Court wanted us to look at, I believe it was Maxwell v. County of San Diego, we went to a remedy sought analysis. And so we have two things. One, the FMLA gives us the individual ability. And two, the remedy sought analysis is where are we suing and why and where do the funds come from? And so are there factual questions involved in that? I mean, the district court, of course, didn't reach that. The district court found that the Coeur d'Alene analysis does not apply simply because there is no government being the plaintiff in that matter. Right. Here, I'm submitting that the law is looking at the law. Does the law apply? And FMLA clearly gives private cause of action to plaintiffs. Are you suing the individuals in their individual capacity? Yes. They were listed in their ‑‑ it's not clear that they were listed in what capacity, but they are clearly listed, both the individual that actually did the termination, which is pled in the complaint, as well as the human resource director, which was pled in the complaint. But under Maxwell, we have to figure out whether you're suing them in their official capacity and you actually want a remedy from ITCN, or whether you're suing them in their individual capacity and you actually want money from their individual pockets. Which one is it? No. It's the latter, and that's what was argued before the trial courts. It's putting out the exact CFR code that defines employer. That's an expansive definition that clearly contains individuals. So, no, it's the latter. So you're suing the individuals in their individual capacity. Do you have any argument that you can also sue ITCN at this point? Or do you concede that ITCN has tribal immunity as an arm of the tribe? No, I do not concede that. Again, from the facts put out as to what the tribal organization is, I don't think the Coeur d'Alene analysis, they fit in the Coeur d'Alene exemptions. Normally ‑‑ But the Coeur d'Alene analysis doesn't talk about whether they have sovereign immunity. So we need to look at the white factors, right? Have you looked at the more recent case, white? Well, in the distinction there, and I have, that's the NAGPRA case. Correct, Your Honor? Yes. That is not a ‑‑ I couldn't quite understand what you just said. It's the ‑‑ and I forget what it is, Native American Indian Grave Repatriation Act, something like that. Right. That's not a Federal statute of general application. This is not a ‑‑ this is not like the Fair Labor Standards Act that is applying to every citizen or anybody working in this country. It's not the Family Medical Leave Act. That is a very limited ‑‑ But the ‑‑ if they are an arm of the tribe under the white factors, the white factors are about whether they're an arm of the tribe. If ITCN is an arm of the tribe, then they have tribal immunity unless it's explicitly abrogated by Congress. And nothing in the FMLA abrogates tribal immunity, does it? There's no statement abrogating tribal immunity. No. And I think you touched upon the confusion. I disagree with that. And that's ‑‑ I've had a difficult time wrapping my head around this, too, Your Honor. But what we have is we have a split amongst the circuits, if you will. Some follow the Tuscarora analysis, which U.S. ‑‑ the Ferris started and so did Coeur d'Alene. Others talk about the unequivocal waiver. They're two completely separate analyses. They're not being put together. So one is touching immunity one way, one is touching is there immunity another way. Do you have any case that's under the Coeur d'Alene type analysis where it's not the Federal government suing the tribe and a court treats that analysis as telling us whether sovereign immunity is waived? No. The case law is clearly very limited. What I have is simply the language as to whether the law applies.  Let's assume white is our guiding, you know, case here. Can you argue why there would be ‑‑ ITCM is or is not an arm of the tribe under white? I'll put out some distinctions. But going to the ends, no, I mean, there is clearly an issue there. The distinctions is normally what happens with the tribe. But when you say it's clearly an issue, what do you mean by that? Well, let me put out the distinction. Here's how it normally works. A tribe, individual tribe starts having businesses, having tribal organizations, et cetera. Here we don't have a tribe branching out. We have different tribes coming together for certain purposes. Which is exactly what we had in white. And I simply, I don't believe that ‑‑ I know you disagree. Yes, Your Honor. But just give me your best arguments regarding whether the white factors or how they would affect whether or not this is an arm of the tribe. My best argument is that's not a law of general application. So you're not going to apply white at all? No, I looked at white. No, I'm asking you to please do that. If we had to apply the white factors here, what's your argument? And I, perhaps I didn't go far enough, but I stopped short of finding this is simply not a law of general application. But I do concede that it can be a tribal organization, which we do have here. But when we look at the tribal organization, you know, I don't believe that the court delaying factors do apply. Do you want to save the remaining time for rebuttal? I would. Thank you. Good morning. May it please the Court, Robert Story, on behalf of ITCN and the individual defendants. One of the individual defendants has passed away, Risa Stern, so we're only talking about the executive director now as the remaining individual defendant. Every federal court who has looked at this issue has concluded that the FMLA does not apply to tribes that have sovereign immunity. If you apply the white analysis that you recently held, ITCN is very similar to the reparation committee, if not close to identical to the reparation committee. I read the white analysis to provide, I think it's five separate issues, to determine whether or not this is an arm of the tribe, the tribes. It clearly is. They serve 26 sovereign federal tribes in the state of Nevada. They are governed exclusively by the chairman or chairwomen of the 26 tribes. Should the chairman or chairwoman not attend, the vice chair of that tribe attends. They provide, it's a nonprofit, 503C Nevada Corporation, has been that way since 1966. The Pink v. Modoc case that you folks decided back in 1998 clearly says that corporations, domestic nonprofit corporations formed by Indian tribes can be governing of the tribes themselves. It is not a business. It is a tribal governmental provider of services. And I'm not sure we should be reviewing this or whether or not we should send it back to the district court to be reviewing this. I'm curious whether the fact that here this particular agency, the one that Ms. Karsten was directing, and this intertribal council actually, was serving a lot of non-tribal members. That is true, Your Honor. And does that affect any, you know, in any way the five-factor white test? Not at all. Every tribe in the United States serves non-members. Indians are not required to marry other Indians. As a consequence, they have spouses who live in a tribe and they receive benefits. No, no. And I know that. I'm familiar with that. But here it seemed like a substantial more number of non-members because they were serving as a regional office in this area. And I just didn't know if that would have an impact. I think it has no impact. I think it's irrelevant, in fact. There are two reasons, I think, that they serve non-tribal members. The first is the grant, some of the grants, the tribes are funded by grants that would otherwise, or the ITCN is funded by grants that would otherwise go to the tribes themselves. And the grants require that some of these programs serve member and non-members. The second reason is these are very rural Indian tribes. If you've ever been to some of the tribal areas in the state of Nevada, they're in the middle of nowhere. And so the tribe serves the entire community, not just the tribe. But I think it's an irrelevant fact. I haven't found one case that suggested that providing services to non-natives somehow abrogates your sovereign immunity. But the record here seems to be very thin with respect to ITCN's formation, organization, funding, interaction with other tribes. The affidavits submitted, I think were two pages, and they really only address two factors of the White analysis. And I'm just wondering if we have enough here at this time. I understand your position, but for an application of the test, is there enough in the record? Well, in fairness to the district court, White postdates. No, I understand that. I think we had asked as a court for you all to let us know how you think White affects this case because White was decided subsequent to this district court decision. One of the things that the district court did when it was deciding this case, looked back at another earlier case. I think it might have been 20 years earlier. I don't recall the date. But ITCN had been in some litigation before, and Judge Edward Reed had decided that ITCN was in fact, based on the facts of that case, was in fact a tribal, I don't think he used the word sovereign immunity, but he did decide that, and that's part of what the district court relied on, plus the affidavits. Would there be any problem remanding, though, for you to supplement the record on these points related to the White factors? Other than cost ITCN, no, absolutely not. These facts are crystal clear and easy enough to produce. How about the individuals? Do you want to talk about the individuals? I'd be happy to, Your Honor. One of the things that you said, I think it was in the Maxwell case, and you quoted an earlier case, is you said that we as a court, the Ninth Circuit, has to be sensitive to what a decision about individual liability does to cause a tribe to do something or not to do something. I submit that if individual liabilities were their sovereign immunity for the FMLA, if they are found liable, there is not one tribal representative anywhere that will find against a request for FMLA, because there's no upside to it from the individual defendants. So what I think, if you were to find that individual defendants in this case were liable under the FMLA, you would effectively abrogate sovereign immunity for the tribe. But isn't that true as to State and local entities as well? I mean, you can make the same argument, right? But we have the general rule that if you sue an individual in their individual capacity, you don't have State sovereign immunity. So why should tribes be different in that regard? Because tribes are governed by different laws. For example, if you're talking about 42 U.S.C. 1983, Congress has adopted the Indian Civil Rights Act, which requires that the Indian tribes comply with civil rights the way any other governmental entity applies with civil rights. So they're required to do that in any case. But isn't the enforcement that you can sue the individuals? I mean, that's essentially because States also have sovereign immunity, and so we have this whole doctrine where you sue individuals in their individual capacity. That's effectively what you said in White. No, it was Maxwell, I believe. You said, yeah, you can. I think the Vihas Band of Indians was sued under California tort law, because even though the tribe was immune, the individuals weren't. In this particular case, this occurs all the time in federal courts. Every single federal court who has looked at this question has concluded that there is no individual liability where the individual defendants were acting within their authority, and they clearly were in this case. We have the ---- But, I mean, Maxwell is exactly about that, right? Maxwell says they were acting within their authority, but that doesn't matter, because what matters is the remedy you're seeking, and the remedy you're seeking is money from the individual's pocket. I don't think that's the case. The original complaint in this case was simply against the ITCN. It was subsequently amended to include the individual defendants, and the only individual defendant left in this case is the executive director. And he clearly has authority to do this. This is simply a termination where a person claims that she has rights under the FMLA, and I submit that because of sovereign immunity, there is no FMLA rights. There's a five-part prima facie case to be made for liability under the FMLA. You have to show, one, that the person is, that the entity is governed by the FMLA, and it clearly isn't in this case. Two, that you have a right to ---- Wait, wait. Why is the entity ---- so they might have sovereign immunity, which would be a reason why you can't sue them under the FMLA because of their immunity, but why ---- what is your argument that the FMLA doesn't apply generally to tribal employers? That's what you said in Pink v. Modok. What you said in Pink v. Modok was that the point, the court reasoned that the purpose of tribal exemptions, like the purpose of sovereign immunity itself, was to promote the ability of Indian tribes to control their own enterprises. Right. So they can't sue ITCN, but why can't they sue the individuals? She, one person, sorry. Why can't she sue the individuals? For a couple of reasons. The first of which is they were acting within the scope of their authority. The executive director clearly has the authority to terminate employees, and that's what this is all about. A terminated employee who had applied for FMLA, it was pretty clear ---- well, the facts aren't there, but it was pretty clear from my point of view that this wasn't an FMLA claim to begin with. It wasn't something that would have been covered even if the tribe, even if ITCN was governed by the FMLA. So even if it was retaliatory, there would be no remedy. That's the second allegation. The reason the person wasn't terminated, and again, this is not in the record, but the reason the person was terminated is because of her behavior toward a subordinate employee. Right. But that kind of goes to the second point, which is whether there's enough here to make that determination, even to come to the conclusion you'd like us to reach. I think there is. I think there is. But you're saying now you're talking about things that aren't in the record, which we can't consider. I understand. I'm simply trying to answer the question as fully as possible. No, I understand, but we're just kind of stuck with this record trying to figure out is there enough. So we'll hear from Ms. Karsten's counsel on rebuttal. Thank you. Thank you, Your Honor. Thank you, Your Honors. Briefly, going to whether there's enough in the record and what is going to be found back down below. I think the record is absent, but going to the wide analysis, one part is that this is a nonprofit corporation. I believe the fifth factor talks about the financial relationship between the parties here. This is not, again, your usual situation of a tribe branching out to manage itself and make money. It's completely different. It's a conduit, if you will. Even if this Court finds that ITCN is an extension of the tribal government, I still submit once that's found, it's acting akin to a tribe, you still need to look at the court delaying factors. If this Court's already decided that that does not apply, I understand that, but that is not the end of the analysis. And I wanted to, and there's also lacking, there's no showing that there's tribal resolutions of the tribes involved. That's how tribes normally act as to what they're doing. It's simply a co-op, if you will. So there are issues still out there going to the wide analysis, but I don't think it's going to be the end all, because it still needs to, you still need to look at court delaying. And finally, I would simply like to talk about counsel's statement to the Indian Civil Rights Act. There's no remedies there. The only remedy in the Indian Civil Rights Act is habeas corpus if it's not followed. So it's basically a law out there with no teeth because it's up to the tribes as to how to apply it. Thank you. Thank you. Karsten versus Intertribal Council is submitted. Thank you both for coming from Nevada and for your arguments this morning.
judges: McKeown, Murguia, Friedland